UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRANDON A. HUERTA,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>  Defendant. | CASE NO. 2:15-CV-01114-DWC<br><br>ORDER ON PLAINTIFF'S COMPLAINT |

Plaintiff filed this action, pursuant to 42 U.S.C § 405(g), seeking judicial review of the denial of Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The parties have consented to proceed before a United States Magistrate Judge. *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13. *See also* Consent to Proceed before a United States Magistrate Judge, Dkt. 7.

After reviewing the record, the Court concludes the Administrative Law Judge ("ALJ") erred by improperly discounting the opinions of one of Plaintiff's examining psychiatrists. Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

ORDER ON PLAINTIFF'S COMPLAINT - 1

## PROCEDURAL & FACTUAL HISTORY

On April 18, 2012, Plaintiff filed an application for SSI, and on February 1, 2013, Plaintiff filed an application for DIB. *See* Dkt. 9, Administrative Record ("AR") 210-223. Plaintiff alleges he became disabled on April 25, 1985, due to symptomatic congenital heart disease, attention deficit/hyperactivity disorder ("ADHD"), learning disabilities, depression, memory loss, and chronic kidney stones. *See* AR 92, 103. Plaintiff's applications were denied upon initial administrative review and on reconsideration. *See* AR 91, 102. A hearing was held before an ALJ on September 20, 2013, at which Plaintiff, represented by counsel, appeared and testified. *See* AR 40. During the hearing, Plaintiff, through counsel, amended his disability onset date to August 30, 2010. AR 44.

On February 8, 2013, the ALJ found Plaintiff was not disabled within the meaning of Sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. AR 31. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 18, 2015, making that decision the final decision of the Commissioner of Social Security (the "Commissioner"). *See* AR 1, 20 C.F.R. § 404.981, § 416.1481. On July 12, 2015, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision.

Plaintiff argues the denial of benefits should be reversed and remanded for further proceedings, because the ALJ erred by: 1) failing to properly evaluate the medical evidence in the record; 2) failing to find Plaintiff's borderline intellectual functioning to be a severe impairment at Step Two of the sequential evaluation; and 3) finding there are jobs which exist in significant numbers in the national economy that Plaintiff can perform at Step Five of the sequential evaluation. Dkt. 11, pp. 1-2.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits only if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)).

## DISCUSSION

I.   Whether the ALJ Properly Evaluated the Medical Opinion Evidence

   **A.  Standard**

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). However, "[i]n order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester,* 81 F.3d at 831). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes*, 881 F.2d at 751). In addition, the ALJ must explain why the ALJ's own interpretations, rather than those of the doctors, are correct. *Reddick*, 157 F.3d at 725 (*citing Embrey,* 849 F.2d at 421-22). The ALJ "may not reject

'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores*, 49 F.3d at 571.

### B. Application of Standard

The ALJ determined Plaintiff has the residual functional capacity to perform sedentary work, subject to an additional nonexertional limitation restricting Plaintiff to understanding, remembering, and carrying out simple, routine, and repetitive tasks.[1] AR 23. Plaintiff contends this finding was erroneous, as the ALJ failed to offer specific and legitimate reasons to reject the more restrictive mental limitations opined to by three examining physicians and psychologists.

#### 1. W. Douglas Uhl, Psy.D.

Dr. Uhl examined Plaintiff on September 14, 2010. AR 368. During his examination, Dr. Uhl documented deficits in Plaintiff's memory and disturbances to Plaintiff's perception or thinking. AR 364. On mental status examination, Plaintiff could not recall any words from a five-word list after five minutes. AR 370. Dr. Uhl noted Plaintiff instead "made up several words which is a possible indication of brain damage." AR 364. Dr. Uhl also noted Plaintiff was exhibiting concrete thinking during the examination, further indicating possible cognitive problems. AR 364, 366, 373. Dr. Uhl ultimately diagnosed Plaintiff with dysthymia and a learning disorder, NOS, and opined Plaintiff had severe impairments in his short term memory and ability to learn new tasks, and marked impairments in Plaintiff's perception and thinking,

---

[1] The ALJ's full residual functional capacity finding includes additional physical limitations not challenged by Plaintiff. AR 23.

ability to exercise judgment and make decisions, ability to respond appropriately to and tolerate the pressures of a work setting, and to engage in self-care. AR 364-66.

The ALJ gave little weight to Dr. Uhl's opinions for the following three reasons:

> "[1][Dr. Uhl's opinion] appeared based in part on the claimant's self report, [2] and because his performance on mental status exam showed poor recall of numbers. Nonetheless, the claimant was able to perform serial sevens and spell "world" backwards, showing he is not markedly impaired in cognitive functioning. The doctor's evaluation notes do not support the degree of limitation opined.[3] It is further noted that the claimant may not have been entirely credible with his examiner as he reported no recent alcohol use, although the claimant reported to another doctor two weeks earlier that he drinks a twelve pack, mainly on weekends. [AR 346]. The doctor was unable to form an accurate opinion or make a complete assessment of the claimant's functioning.

AR 29 (numbering added). These were specific and legitimate reasons, supported by substantial evidence, for the ALJ to reject Dr. Uhl's opinion.

First, the ALJ found Plaintiff's performance on serial sevens and his ability to spell "world" backwards during Dr. Uhl's mental status exam contradicted Plaintiff's "poor recall of numbers,"[2] indicating Plaintiff was not markedly impaired in "cognitive functioning." AR 29. An ALJ may properly discount an examining physician's opinion when it is brief, conclusory, and inadequately supported by clinical findings or by the record as a whole. *Batson v. Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cit. 2001)); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Based on a review of the mental status examination results, the ALJ could reasonably interpret Plaintiff's performance on the mental status examination as inconsistent with Dr. Uhl's opined

---

[2] The Court notes Dr. Uhl did not find Plaintiff had poor recall of numbers. Instead, Dr. Uhl found Plaintiff was unable to recall a list of words after five minutes. AR 370. Plaintiff does not address this apparent error in the ALJ's analysis. However, a review of Dr. Uhl's opinion and the ALJ's decision suggests this error is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012).

1 | limitations. AR 369-74. *See Morgan v. Commissioner of Soc. Sec. Admin.*, 169 F.3d 595, 601-02
2 | (9th Cir. 1999); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)  Second, the ALJ
3 | notes Plaintiff did not report his recent alcohol use to Dr. Uhl, indicating Plaintiff may not have
4 | been entirely credible. AR 29, 365. Plaintiff argues, the evaluation form simply asks Dr. Uhl if
5 | "there is an indication of current or recent alcohol or substance abuse," to which Dr. Uhl
6 | answered "no." AR 365.  It is true, Dr. Uhl does not indicate whether he actually asked Plaintiff
7 | about his alcohol use, nor does he indicate Plaintiff made any statements about his alcohol use
8 | during the examination. However, it is rational for the ALJ to interpret the evaluation form to
9 | mean Plaintiff was not forthcoming about his alcohol use. "The court will uphold the ALJ's
10 | conclusion when the evidence is susceptible to more than one rational interpretation."
11 | *Tommasetti*, 533 F.3d at 1038. Finally, the fact Dr. Uhl's opinion was based in part on Plaintiff's
12 | subjective complaints is not a specific and legitimate reason to discount Dr. Uhl's opinion. There
13 | is no indication in the record, and the ALJ did not find, that Dr. Uhl's opinion was based
14 | *primarily* on Plaintiff's self-reports. *Id.* "[W]hen an opinion is not more heavily based on a
15 | patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the
16 | opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). *See also Tommasetti*, 533 F.3d
17 | at 1041, *Blessing v. Astrue*, 2013 WL 316153, at *6 (W.D. Wash. 2013). However, in light of the
18 | ALJ's other specific and legitimate reasons for discounting Dr. Uhl's opinion, this error is
19 | harmless. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).
20 |      As the ALJ offered specific and legitimate reasons supported by substantial evidence to
21 | reject Dr. Uhl's opinion, the ALJ did not err.

       *2. David Sandvik, M.D.*

  On March 21, 2011, Dr. Sandvik examined Plaintiff. AR 397. During Dr. Sandvik's examination, Plaintiff was unable to complete serial sevens, and could only recall one of three objects clearly after three and six minutes. AR 398. Dr. Sandvik diagnosed Plaintiff with dysthymia, anxiety disorder NOS, and a learning disorder NOS. AR 398. Dr. Sandvik opined Plaintiff had difficulties doing simple arithmetic, problems focusing on task at junctures, and a lack of good stress management capabilities. AR 399. Dr. Sandvik also opined "it is difficult to perceive that he could perform work activities consistently through a normal workday." AR 399. The ALJ gave Dr. Sandvik's opinions little weight for the following two reasons:

> [1] The evidence suggests the claimant did not put forth full effort on this examination so the doctor was unable to make an accurate assessment of his functioning. For instance, the claimant did not perform serial sevens, even though he was able to on an earlier exam (*see* [Dr. Uhl, AR 374]). [2] Furthermore, the doctor did not sufficiently explain the basis for his opinion and reasons why the claimant could not persist.

AR. 29 (numbering added). These were not legally sufficient reasons for discounting Dr. Sandvik's opinion.

  First, the ALJ's finding that Plaintiff did not put forth full effort on the examination was not supported by substantial evidence. Dr. Sandvik did not opine Plaintiff was malingering or otherwise exaggerating symptoms. In fact, the record does not reflect any physician, psychiatrist, or state agency medical consultant documented malingering, exaggeration of symptoms, or a failure to put forth full effort. Instead, the ALJ relies upon the fact Plaintiff was unable to perform serial sevens during Dr. Sandvik's examination, in contrast to Plaintiff's performance on Dr. Uhl's examination six months prior. AR 29, 374, 398. Though an ALJ may draw inferences logically flowing from the record, an ALJ may not speculate. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); SSR 86-8, 1986 WL 68636, at *8. Variance in a claimant's

performance on mental health testing, by itself, does not indicate a claimant's mental health conditions are not disabling. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). *See also Punzio*, 630 F.3d at 710 ("a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition"). Without more, Plaintiff's inconsistent performance on serial sevens could not constitute substantial evidence of Plaintiff's lack of effort.

Defendant, citing *Chaudhry v. Astrue,* argues an ALJ may consider a claimant's failure to exert full effort on diagnostic testing. However, *Chaudhry* is distinguishable. As Defendant acknowledges, the *Chaudhry* case dealt with an examining physician who opined the claimant "appeared not to exert adequate effort during testing." 688 F.3d at 671. *See also Bullene v. Astrue*, 2012 WL 6917774, *7 (W.D. Wash. 2012) ("[T]he ALJ was entitled to discount a medical opinion where *the provider* noted that the claimant did not put forth full effort on testing, because the opinion is based on invalid test results.") (emphasis added) (*citing Thomas Barnhart*, 278 F.3d at 958). Unlike the ALJ in *Chaudhry*, the ALJ in this case could not rely upon any medical opinion in the record indicating Plaintiff's poor performance on an examination was the result of a failure to put forth full effort. The ALJ's interpretation of Plaintiff's varied performance on serial sevens appears to be nothing more than speculation unsupported by the record. *See* AR 28-29.

The ALJ's other reason for discounting Dr. Sandvik's opinion, "the doctor did not sufficiently explain the basis for his opinion and reasons why the claimant could not persist," is conclusory, and not sufficiently specific to allow the Court the opportunity for meaningful review. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001); *Embry v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988). Defendant interprets the ALJ's statement to mean Dr. Sandvik's

findings "do not show a complete inability to perform work activities consistently through a normal workday." Dkt. 12, p. 8. Even if the Court accepts this was the ALJ's reasoning, it does not appear to be supported by substantial evidence. Throughout Dr. Sandvik's concluding thoughts and recommendations, he identified numerous limitations which could adversely impact Plaintiff's ability to work consistently through a normal workday, namely: 1) concrete thinking; 2) difficulties with arithmetic; 3) problems focusing on tasks at junctures; 4) apparent lack of good stress management capabilities; and 5) Plaintiff desists in situations of stress or obligation. AR 399. Plaintiff's mental status examination results also contain supporting evidence for Dr. Sandvik's conclusions. *See* AR 398 (noting Plaintiff had difficulty with several tasks, such as: he began to perform serial sevens, but stopped because "he could not do any more;" was unable to interpret abstractions; was unable to find more than basic similarities between objects; had almost no knowledge of current events; and had difficulty recalling objects after a short period of time). Contrary to the Defendant's argument, these findings and limitations support Dr. Sandvik's conclusion Plaintiff would be unable to perform work activities consistently throughout a normal workday. As these were not specific and legitimate reasons supported by substantial evidence, the ALJ erred by rejecting Dr. Sandvik's opinion.

Identifying an error in the ALJ's decision, however, does not end this Court's inquiry. The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006). An error is harmless "so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina*, 674 F.3d *at* 1115 (*quoting Batson*, 359 F.3d at 1197 (9th Cir. 2004). Here, Dr. Sandvik opined Plaintiff desists in situations of stress or

1  obligation, and concluded it was unlikely "he could perform work activities consistently through
2  a normal workday." AR 399. It is unclear from the ALJ's opinion whether these limitations are
3  more restrictive than the limitation to "understand[ing], remember[ing] and carry[ing] out
4  simple, routine, and repetitive tasks" contained in the residual functional capacity. AR 23. *See*
5  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding the ALJ properly
6  translated an examining physician's opined limitations as to concentration, persistence and pace
7  into a restriction of "simple, routine, repetitive sedentary work" because the doctor's opined
8  limitations were consistent with the residual functional capacity finding); *Howard v. Massanari*,
9  255 F.3d 577, 582 (8th Cir. 2001) (holding the ALJ properly limited Plaintiff to "simple, routine,
10 repetitive work," based on the state agency psychological consultant's opinion the claimant was
11 "able to sustain sufficient concentration and attention to perform at least simple, repetitive, and
12 routine cognitive activity without severe restriction of function."). A failure to properly discount
13 limitations which are more restrictive than ones contained in the residual functional capacity
14 finding is not "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d. at
15 1115. Because the Court cannot determine from the the ALJ's opinion whether the residual
16 functional capacity is consistent with Dr. Sandvik's opined limitations, the ALJ's errors in
17 evaluating Dr. Sandvik's opinion are harmful errors requiring remand.

18                    *3.   Anselm Parlatore, M.D.*

19      On October 14, 2011, Dr. Parlatore examined Plaintiff. AR 401. During the examination,
20 Plaintiff was disoriented, unable to understand and follow simple directions, and had problems
21 with concentration, focus, attention, and memory on the Folstein mini-mental status exam. AR
22 402. Dr. Parlatore diagnosed Plaintiff with ADHD, learning disorder, NOS, and borderline
23 intellectual functioning. AR 402. In Dr. Parlatore's opinion, these conditions would lead to
24

marked impairments across a range of cognitive and social areas, including his ability to understand, remember, and persist in tasks following simple and complex instructions, learn new tasks, perform routine tasks without undue supervision, and communicate and perform effectively in a work setting with any public contact. AR 403. The ALJ gave Dr. Parlatore's opinion little to no weight for the following three reasons:

> [1] The doctor provided no objective test results and minimal explanation of his findings. He did not attach the results of a mental status exam as required for the evaluation. [2] Furthermore, the doctor diagnosed mental retardation and/or borderline intellectual functioning without any objective testing, which further calls into question the legitimacy of all of his findings. [3] Marked limitations are inconsistent with the claimant's ability to engage in a wide range of activities as discussed above.

AR 28 (numbering added).

Plaintiff contends these were not specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Parlatore's opinion. The Court disagrees. First, an ALJ may properly discount an examining physician's opinion when it is brief, conclusory, and inadequately supported by clinical findings or by the record as a whole. *Batson*, 359 F.3d at 1195 (*citing Tonapetyan*, 242 F.3d at 1149); *Thomas*, 278 F.3d at 957 (9th Cir. 2002). Dr. Parlatore's conclusory and nonspecific statement Plaintiff exhibited "deficits on Folstein" was an insufficient substitute for the actual mental status examination results. AR 403. Further, Dr. Parlatore failed to explain the majority of his findings. *See* AR 403. Second, Dr. Parlatore's diagnosis of borderline intellectual functioning is unsupported by any objective testing or record evidence actually available to Dr. Parlatore at the time of his examination. Plaintiff argues Dr. Parlatore's opinion is consistent with objective IQ testing in the record; however, the IQ test in question was conducted almost two years after Dr. Parlatore's evaluation. AR 401, 435-44. The fact Dr. Parlatore's diagnosis is consistent with objective testing conducted two years after his

ORDER ON PLAINTIFF'S COMPLAINT - 11

examination does not alter the fact Dr. Parlatore's diagnosis was rendered entirely without objective medical evidence. The ALJ's reasoning for discounting Dr. Parlatore's diagnosis of borderline intellectual functioning is specific and legitimate, and supported by substantial evidence. *See Batson*, 359 F.3d at 1195.

Finally, the ALJ failed to sufficiently identify which of Plaintiff's activities of daily living actually conflicted with Dr. Parlatore's opinion, and otherwise failed to explain how Plaintiff's activities actually conflicted with Dr. Parlatore's opined limitations. AR 28. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014). Thus, the third reason for rejecting Dr. Paralore's opinion is not sufficiently specific, nor is it supported by substantial evidence. However, as the ALJ offered other specific and legitimate reasons for discounting Dr. Parlatore's opinion, this error was harmless. *See Molina*, 674 F.3d at 1115.[3]

II. **Whether the ALJ Erred at Step Two of the Sequential Evaluation by Failing to Include "Borderline Intellectual Functioning" as one of Plaintiff's Severe Impairments.**

Plaintiff argues the ALJ erred by failing to find Plaintiff had the severe impairment of borderline intellectual functioning at Step Two of the sequential evaluation. Plaintiff further argues this was harmful error, as the ALJ's residual functional capacity analysis did not take into account any limitations arising from Plaintiff's borderline intellectual functioning.

**A. Standard**

At Step Two of the administration's evaluation, the ALJ is required to determine whether the claimant has "a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (internal citation omitted); 20 C.F.R. §§

---

[3] The Court's conclusion should not be taken as an invitation, on remand, to discount Dr. Parlatore's opinions out of hand. As discussed below the ALJ must reweigh all the medical opinion evidence on remand. This includes Dr. Parlatore's opinion.

404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). Impairments must result "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908 (2010). An impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Id. See also Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005). It is the Plaintiff's burden to "furnish[] such medical and other evidence of the existence [of a severe impairment] as the Secretary may require." *Bowen*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)).

### B. Application of Standard

In this case, the ALJ did not discuss borderline intellectual functioning during Step Two. However, the ALJ found Plaintiff had other severe impairments and proceeded beyond Step Two. AR 20. Further, the ALJ discussed Dr. Parlatore's borderline intellectual functioning diagnosis, as well as Plaintiff's IQ testing, in the ALJ's evaluation of the medical opinion evidence and Plaintiff's residual functional capacity. AR 26, 28. Thus, any error in failing to find Plaintiff's borderline intellectual functioning to be a severe impairment at Step Two was harmless, as Plaintiff ultimately prevailed at Step Two, and the ALJ actually considered the impairments—regardless of their severity—in all subsequent steps. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Nonetheless, in light of the ALJ's errors in evaluating the opinion of Dr. Sandvik, this case must be remanded for further administrative proceedings. Thus, on remand, the ALJ will be required to conduct a *de novo* Step Two evaluation.

### III.    Whether the ALJ Erred at Step Five

Plaintiff contends the ALJ's findings at Step Five were made in error, as the Vocational Expert testified there were less than 25,000 jobs available in the national economy for a person

1  with Plaintiff's residual functional capacity. However, the Court need not address this argument.
2  According to Social Security Administration Rulings, a residual functional capacity assessment
3  "must always consider and address medical source opinions. If the [residual functional capacity]
4  assessment conflicts with an opinion from a medical source, the adjudicator must explain why
5  the opinion was not adopted." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *7. As
6  discussed in Section I, above, the ALJ failed to properly evaluate the opinion of Dr. Sandvik and
7  may not have included all of Plaintiff's limitations in the residual functional capacity. An error in
8  the ALJ's residual functional capacity finding is not "inconsequential to the ultimate
9  nondisability determination," as the ALJ's Step Five findings are predicated on the ALJ's
10 residual functional capacity findings. *See Molina*, 674 F.3d *at* 1117; SSR 96-8p, 1996 WL
11 374184, *7. Thus, the ALJ will necessarily need to revisit the Step Five findings on remand.

## **CONCLUSION**

Based on the above stated reasons and the relevant record, the Court finds the ALJ erred by failing to properly evaluate the medical opinion of Dr. Sandvik. Therefore, the Court orders this matter be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the ALJ should reevaluate and reweigh all of the medical opinion evidence, reevaluate Plaintiff's credibility, reevaluate Plaintiff's residual functional capacity, and proceed on to Step Four and/or Step Five of the sequential evaluation, as appropriate. Judgment should be for Plaintiff and the case should be closed.

Dated this 6th day of January, 2016.

David W. Christel
United States Magistrate Judge